UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEROME L. WEINMANN and
SUSAN M. WEINMANN,

           Plaintiffs,

    v.                                     Case No.  13-C-0088

DEPUTY PATRICK MCCLONE and
WAUPACA COUNTY,

           Defendants.

## ORDER ON MOTIONS IN LIMINE

Plaintiffs Jerome and Susan Weinmann brought this action under 42 U.S.C. § 1983 for injuries sustained by them when Jerome was shot by Deputy Patrick McClone of the Waupaca County Sheriff's Department. Deputy McClone shot Jerome while responding to a call that Jerome had gone into his garage with a gun intending to shoot himself. The Weinmanns allege that Deputy McClone used excessive force against Weinmann in violation of his rights under the Fourth Amendment. They also asserted a claim against Waupaca County, but that claim was dismissed on summary judgment. This order addresses several motions in limine filed by McClone and taken under advisement following a final pretrial conference held September 25, 2015.

**I.    Entry to Garage**

McClone moves to preclude any "claim, statements or argument challenging Deputy McClone's entry into the detached garage where Weinmann was situated" on the night in question. (Mot. ¶ 3, ECF No. 48.) McClone argues any such claim, statement or argument would be improper

because the Weinmanns have not pled a claim for wrongful entry.

The Weinmanns' claim is for excessive force under the Fourth and Fourteenth Amendments. Such a claim requires showing Deputy McClone used objectively unreasonable force, considering all of the circumstances surrounding the use of force. *Graham v. Connor*, 490 U.S. 386, 396 (1989). That such circumstances here include the manner in which McClone entered the garage is clear from the Seventh Circuit's decision affirming this court's denial of McClone's summary judgment motion. *See Weinmann v. McClone*, 787 F.3d 444, 451 (7th Cir. 2015) ("Kicking down a door and immediately shooting a suicidal person who is neither resisting arrest nor threatening anyone save himself is an excessive use of force. . . . McClone did not look through the other windows into the garage to see what Jerome was doing, nor did he try to talk to him. Instead, within three minutes of arriving at the scene, McClone opened fire. Either viewed as so plainly excessive that no analogous case is needed, or viewed in light of existing authority, this was an excessive use of force."). Of course, the Seventh Circuit's decision was based on a factual record in which McClone conceded certain things for purposes of summary judgment on his qualified immunity defense. At trial, McClone will be able to present his side of the story. The Weinmanns will too, however, and the circumstances leading up to the use of force, including McClone's entry to the garage an instant before he discharged his weapon, are relevant to their claim.

McClone also argues that "any claims, statements or arguments that the entry itself by law enforcement into Plaintiffs' garage, or the subsequent search or seizure of his person or evidence, were illegal, or were improper" should be precluded by collateral estoppel arising from a state trial court order denying Jerome Weinmann's motion to suppress in a prior criminal case. Jerome was charged with being a felon in possession of a firearm following the incident in question. He moved

2

to suppress evidence including the gun, arguing Deputy McClone should have obtained a warrant before entering the garage. Waupaca County Circuit Court Judge Phillip Kirk rejected this argument, finding instead that McClone's actions were reasonable and his entry to the garage was lawful based on exigent circumstances. (Hearing Tr. at 31, Ford Aff. Ex. H, ECF No. 50-8.) Weinmann ultimately pled no contest to and was convicted of this offense, and he did not appeal the denial of his motion to suppress. McClone argues that, given Judge Kirk's ruling on the motion to suppress, the Weinmanns are precluded from presenting evidence or arguing to the jury on a number of the underlying issues before Judge Kirk, including how long McClone was on the scene before entering the garage, whether he got a search warrant, and more. (*See* Mot. ¶ 4(a)–(*l*).)

"[F]ederal courts must give a state court judgment the same preclusive effect that it would receive under state law." *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003). Under Wisconsin law:

> Issue preclusion addresses the effect of a prior judgment on the ability to re-litigate an identical issue of law or fact in a subsequent action. In order for issue preclusion to be a potential limit on subsequent litigation, the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and be necessary to the judgment. If the issue actually has been litigated and is necessary to the judgment, the circuit court must then conduct a fairness analysis to determine whether it is fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand.

*Mrozek v. Intra Financial Corp.*, 2005 WI 73, ¶ 17, 281 Wis. 2d 448, 699 N.W.2d 54 (internal citations omitted).

In this case, the issue for trial—whether Deputy McClone's use of deadly force was excessive—was not "actually litigated" in the previous case, where the issue on the motion to suppress was about the reasonableness, for Fourth Amendment purposes, of McClone entering the

3

garage without first obtaining a warrant. These are clearly different issues. To say that exigent circumstances existed that justified McClone's entry to the garage without first obtaining a search warrant is not the same as saying that McClone did not use excessive force in shooting Weinmann upon entering the garage. As the Seventh Circuit explained in affirming the court's denial of defendant's motion for summary judgment, determining whether a state officer's use of force is excessive for Fourth Amendment purposes requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." 787 F.3d at 448 (quoting *Graham v. Connor*, 490 U.S. 386, 395(1989)). In performing that balancing, that court explained, the factfinder "should consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

Here, the state court found that Deputy McClone was justified in entering Weinmann's garage without first obtaining a warrant under both the exigent circumstances exception to the search warrant requirement and under the community caretaker exception. Weinmann has indicated that he does not intend to argue that Deputy McClone's entry was illegal, but claims he must be able to put before the jury the circumstances leading up to the shooting, including McClone's entry, and should be free to argue that McClone acted unreasonably in choosing to enter the garage at the time and in the manner he did. I agree. Judge Kirk made no formal findings of fact, other than to conclude generally that Deputy McClone acted reasonably in entering immediately upon the belief that Weinmann was in the process of committing suicide. Order Denying Mot. for Reconsideration,

4

ECF No. 50-7.

Equally important, I conclude it would be unfair to bar Weinmann from arguing that Deputy McClone's conduct leading up to the shooting was unreasonable. As noted above, even if there are common factual issues underlying both the excessive force claim in this case and the illegal entry claim, Wisconsin courts would not apply issue preclusion if the fairness analysis convinces the court that it would be unfair to do so. In conducting the fairness analysis, Wisconsin courts consider the following factors:

> (1) whether the party against whom preclusion is sought could have obtained review of the judgment; (2) whether the question is one of law that involves two distinct claims or intervening contextual shifts in the law; (3) whether there are apt to be significant differences in the quality or extensiveness of the two proceedings such that relitigation of the issue is warranted; (4) whether the burden of persuasion has shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and (5) whether matters of public policy or individual circumstances would render the application of issue preclusion fundamentally unfair, including whether the party against whom preclusion is sought had an inadequate opportunity or incentive to obtain a full and fair adjudication of the issue in the initial litigation.

*Mrozek*, 2005 WI 73 at ¶ 17. Consideration of several of these factors leads me to conclude that it would be unfair to apply issue preclusion here, even if it would otherwise apply.

First, while it is true that Weinmann could have sought review of the trial court's order denying his motion to suppress by appealing his conviction, he had little incentive to do so. Weinmann's attorney in the criminal proceeding negotiated a plea agreement on his behalf that resulted in a sentence of probation for three years with 90 days of jail as a condition of probation that was stayed. In other words, Weinmann received straight probation with no jail time. Given his medical condition and his previous felony conviction, he had no incentive to pay an attorney to appeal the adverse ruling.

The second and third factors also favor denying preclusive effect to the prior state court ruling. As noted above, the questions of law involve two distinct legal claims: illegal warrantless entry and excessive use of force. Moreover, Weinmann's motion to suppress was decided by a trial judge after a brief evidentiary hearing that was part of the criminal proceedings against him. In his lawsuit against Deputy McClone on his claim for excessive use of force, Weinmann is entitled to conduct extensive pretrial discovery and have a jury determine the facts after full trial. Both the quality and extensiveness of presentation of the issue at trial, removed from the context of a criminal proceeding seeking the suppression of evidence, are likely to be greater.

It is true that Weinmann will have the burden of proving by a preponderance of the evidence that Deputy McClone acted unreasonably in his use of force against him, whereas in the criminal proceeding, the State had the burden of proof on whether the entry was unreasonable, but the fifth consideration also supports denying the state court determination preclusive effect. On the one hand, the public policies motivating the preclusion doctrine which are related to finality of judgments and protecting parties from repetitious or harassing litigation are not at play. *See Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 688, 495 N.W.2d 327 (1993) ("[F]ederal and state courts balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims before a jury when deciding whether to permit parties to collaterally estop one another."). On the other hand, the Weinmann's have a strong interest, indeed, an interest guaranteed under the Seventh Amendment, in presenting all relevant evidence to their never-before litigated excessive-force claim. And as noted above, given the fact that Mr. Weinmann's attorney was able to negotiate on Weinmann's behalf a favorable plea agreement in the previous case, Weinmann would have had little incentive to appeal Judge Kirk's ruling. *Cf. Mrozek*,

6

2005 WI 73, ¶ 21 (concluding that guilty plea pursuant to plea agreement did not fulfill the "actually litigated" requirement for issue preclusion regarding the facts underlying the criminal conviction).

In sum, I conclude upon consideration of all of the foregoing factors that it would be unfair to preclude Weinmann from fully litigating his claim against Deputy McClone based on the state court ruling on his motion to suppress the evidence against him in his criminal case. McClone's motions in limine 3 and 4 are therefore denied.

## II.     Medical Expenses Paid by Plaintiffs' Insurer

McClone also moves to preclude "any claim for medical expenses paid by United Health Care under its insurance policy, on the basis of United Health Care's subrogation rights and because double recovery to the Plaintiffs is not allowed." (Mot. ¶ 5.) In support of this argument, McClone notes that the insurance policy between United Healthcare and Susan Weinmann under which Jerome Weinmann received benefits contains a subrogation agreement. Under Wisconsin law, it has been said that where subrogation exists, the collateral source rule—which holds that a personal injury claimant's recovery is not to be reduced by the amount of compensation received from sources "collateral" to the defendant[1]—is inapplicable. *See Lambert v. Wrensch*, 135 Wis. 2d 105, 121, 399 N.W.2d 369 (1987); *Ellsworth v. Schelbrock*, 2000 WI 63, ¶ 18, 235 Wis. 2d 678, 611 N.W.2d 724. The theory is that one of the purposes of subrogation is to prevent double recovery, and therefore "an insurer's subrogation rights may trump the collateral source rule and prevent a plaintiff from recovering from a defendant-tortfeasor the amounts paid by the subrogated party." *Koffman v. Leichtfuss*, 2001 WI 111, ¶ 36, 246 Wis. 2d 31, 630 N.W.2d 201.

---

[1] *Lambert v. Wrensch*, 135 Wis. 2d 105, 110 n.5, 399 N.W.2d 369 (1987).

7

In *Lambert* the Wisconsin Supreme Court held that the plaintiff could not recover amounts paid by the subrogated party even when the tortfeasor would not have to pay the subrogated party those amounts because the subrogated party's claim against the tortfeasor had expired under the applicable statute of limitations. Although this situation winds up creating a windfall for the tortfeasor, "that is the public policy expressed in the statutes of limitation." *Lambert*, 135 Wis. 2d at 119, 399 N.W.2d 369 (quotation omitted). McClone argues that because United Healthcare was never named in this action and has not asserted any claim against McClone, its claim is time-barred, and Plaintiff is precluded from recovering from McClone amounts paid by United, just as in *Lambert*. In response, Plaintiffs state that prior to filing this suit, they "agreed to protect the interest of United Healthcare," as "is a very common method to address subrogated liens." (Pls.' Resp. 8, ECF No. 56.) Plaintiff notes that there is no risk of double recovery by Jerome Weinmann because United will be reimbursed from any potential recovery "by agreement and contract." (*Id.*)

The court agrees with Plaintiffs that there is no risk of double recovery here. If what Plaintiffs say is true—i.e., United assigned its claim to them before they filed[2]—United's claim would not be extinguished as McClone asserts. And although McClone argued at the final pretrial conference that the only evidence of such an assignment in the record is the word of Plaintiffs' counsel, the applicability of a statute of limitations is normally an affirmative defense the defendant must prove. In any event, aside from the issue of the timeliness of a United subrogated claim against

---

[2] After the final pre-trial conference, Plaintiffs' counsel submitted an affidavit in which he states that although he does not have any independent recollection of his conversations with the representatives of the subrogated insurer, it would have been his practice to advise that the plaintiffs were aware of the subrogation interest and would protect the interest over the course of the litigation. Plaintiffs' counsel also submitted a written assignment of United's claim to Plaintiffs, executed September 30, 2015, and formalizing the parties' pre-existing agreement. (ECF No. 59-1.)

8

McClone, the insurance policy at issue is covered by ERISA, and therefore Plaintiffs would be required by that statute to reimburse United any recovery from McClone. *See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Lewis*, 745 F.3d 283 (7th Cir. 2014) (insurer's subrogation lien enforceable under ERISA, 29 U.S.C. § 1132(a)(3)).

Finally, any timeliness issue that may exist can also be resolved by amendment of the complaint. Under Wisconsin law, United would be joined under Wis. Stat. § 803.03(2)(a), and its subrogation claim would not be time-barred because Plaintiffs timely commenced this action. *Anderson v. Garber*, 160 Wis. 2d 389, 400 n.3, 466 N.W.2d 221 (Ct. App. 1991); *Aetna Cas. & Sur. Co. v. Owen*, 191 Wis. 2d 744, 751–52, 530 N.W.2d 51 (Ct. App. 1995). In federal practice, Plaintiffs could name United Healthcare as an involuntary plaintiff. Although Rule 15(c) of the Federal Rules of Civil Procedure does not expressly deal with the issue of the "relation back" of an amended pleading that adds a separate claim by a new *plaintiff*, the analysis is the same as when a defendant is added. *See Korkow v. Gen. Cas. Co. of Wis.*, 117 Wis. 2d 187, 344 N.W.2d 108 (1984) (discussing "relation back" of amendments adding separate claim by different plaintiffs under Wisconsin and federal law); *Hocket v. American Airlines, Inc.*, 357 F. Supp. 1343, 1347–48 (N.D. Ill. 1973) (amendment adding separate claim by new plaintiff related back where the adverse party had notice and was not prejudiced); Fed. R. Civ. P. 15 Adv. Comm. Notes to 1966 Amendment ("The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs."). Here, such an amendment would be permissible because United's claim would arise out of the same transaction as the claims in the initial pleading,

9

and McClone had fair notice of the claim and would not be prejudiced by the fact that it was not part of Plaintiffs' initial pleading. Rather, Plaintiffs have alleged all along that they are seeking to recover the expenses incurred for medical care allegedly caused by McClone's actions. (Compl. ¶ 27, ECF No. 1.)

The only outstanding motion in limine in this case concerns Defendant's objections to the testimony of Plaintiffs' expert witness Dr. William Gaut. Plaintiffs have supplemented the record following the final pretrial conference with the questions they will ask Dr. Gaut to answer (though not Gaut's proposed testimony). (ECF No. 59.) Absent some indication of what opinions Dr. Gaut would express in response to the questions posed to him, it is impossible to determine whether they would be admissible. Accordingly, any issues with respect to Dr. Gaut's testimony will have to be addressed at or just before trial.

For the reasons above, Defendant's motions in limine based on collateral estoppel and based on United Healthcare's supposedly expired subrogation claim are denied.

**SO ORDERED** this  2nd  day of October, 2015.

                                                          s/ William C. Griesbach
                                                          William C. Griesbach, Chief Judge
                                                          United States District Court